# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RONI FUENMAYOR TORRES,**

    **Petitioner,**

  **v.**            **Case No.:  6:26-cv-00258-AGM-LHP**

**LOUIS A. QUINONES, JR.; KRISTI
NOEM; and GARRETT J. RIPA;**
    **Respondents.**

_____

## ORDER

Petitioner Roni Fuenmayor Torres is a Venezuelan national who, for the second time, petitions the Court to challenge his ongoing detention.  His first petition was dismissed in a different case, *Torres v. Quinones, et al.*, 6:26-cv-00184-AGM-LHP (M.D. Fla. Jan. 28, 2026) ("Torres I").  A petition for writ of habeas corpus can be amended pursuant to 28 U.S.C. § 2242, but rather than seeking to file an amended petition, Mr. Torres filed a new petition (doc. # 1; the "Petition") in this action ("Torres II").  Torres II was originally assigned to a different judge.  Once the relationship between Torres I and Torres II was identified, this case was transferred to the undersigned pursuant to Middle District of Florida Local Rule 1.07.  (Doc. # 8.)

Before the Court now is the Petition, Mr. Torres's Emergency Motion to Order Return of Petitioner to the Middle District of Florida (Doc. # 2; the "Motion to Return"), and his Emergency Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. # 3; the "Motion for TRO").  For the reasons explained below, Mr. Torres's Petition is due to be dismissed.  Both the Motion to Return and the Motion for TRO are due to be denied.

Since the date Torres II was filed, the Fifth Circuit decided *Buenrostro-Mendez v. Bondi*, Case No. 25-20496, 2026 WL 323330, --- F.4th ---- (5th Cir. Feb. 6, 2026) and, consequently, any amended petition must address the applicability of that case to the relief Mr. Torres requested.

I.    **Background**

A.    **The Petition**

The Petition alleges that Mr. Torres was arrested because he was "undocumented." It alleges that Mr. Torres is currently confined without any pending criminal charges, without a warrant, and, in his view, without any lawful authority based on an Immigration and Customs Enforcement ("ICE") immigration detainer. (Doc. # 1 at 2.) It claims that Mr. Torres is lawfully present in the United States and asserts that his ongoing detention is unlawful. (*Id.* at 3.)

The Petition alleges that Mr. Torres is detained unlawfully at the Orange County Jail in Orlando, Florida. (Doc. # 1 at 1, ¶¶ 1, 7.)[1] It also alleges that "[r]espondents have threatened and attempted to transfer Petitioner to ICE custody, which would irreparably deprive him of liberty and risk frustrating this Court's habeas jurisdiction." (Doc. # 1 at ¶ 4.) It alleges that every seventy-two hours, he is moved from the Orange County Jail and transported to an ICE facility for a few hours before being transferred back again. (*Id.* at ¶ 21.) Mr. Torres claims this recurring transfer is meant to "artificially reset the detention clock" and frustrate jurisdiction. (*Id.* at ¶ 21.)

---

[1] For citation purposes, it is noted that the same paragraph number appears in more than one part of the Petition.

The Petition demands that this Court (1) issue a writ of habeas corpus directing Respondents to immediately release him from custody; (2) enter a temporary restraining order and/or preliminary injunction prohibiting his transfer from the Orange County Jail pending resolution of this action; (3) declare that Mr. Torres's detention is unlawful; (4) order expedited proceedings under 28 U.S.C. § 2243; and (5) grant such other relief as the Court deems just and proper.  (*Id.* at 7.)

### B.    The Motion for TRO

After filing the Petition, Mr. Torres filed the Motion for TRO.  The Motion for TRO includes a sworn declaration of counsel and indicates notice was provided to Respondents. (Doc. # 3 at 6.)  It requests preliminary injunctive relief to (1) prohibit Mr. Torres's recurring transfer; (2) order Respondents to maintain Mr. Torres within the Middle District of Florida; and (3) set an expedited schedule for consideration of a preliminary injunction.  (*Id.* at 7.)  In the Motion for TRO, Mr. Torres makes allegations that are not made in the Petition.  For example, he alleges that he "was inspected and admitted upon entry" into the United States "with a pending asylum application."  (Doc. # 3 at 2.)

### C.    The Motion to Return

Contemporaneous with filing the Motion for TRO, Mr. Torres filed the Motion to Return alleging that—on an unspecified date following the dismissal in Torres I—he was taken into ICE custody.  (Doc. # 2.)  The Motion to Return alleges that, "[a]fter the habeas petition was filed, and before the Court ruled on Petitioner's emergency request for relief on the merits rather than its procedural defects, ICE transferred Petitioner without notice to counsel to an

unknown ICE detention facility."[2]  (*Id.* at 2.)  As a result of the alleged transfer, the Motion to Return alleges that (1) Counsel has lost direct access to Mr. Torres; (2) it has been difficult for his family to communicate with him; and (3) he is unable to meaningfully litigate the Petition in the Middle District.  (*Id.*)  The Motion to Return requests that the Court order Respondents[3] to (1) disclose Mr. Torres's location; (2) order Respondents to return "Petitioner Francisco Delgado Garcia";[4] (3) produce Mr. Torres as required by the Court; (4) confirm that this Court retains exclusive jurisdiction over this habeas action; and (5) grant such other relief as justice requires.  (*Id.* at 3.)

## I.    LEGAL STANDARD

### A.    Writ of Habeas Corpus

The Latin term "habeas corpus" literally translates to "you shall have the body"[5] and the issuance of a writ of habeas corpus compels the custodian of a petitioner to bring the petitioner into court so that the legality of the detention may be assessed.

### B.    Subject Matter Jurisdiction Generally

"Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding."  *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001).  The party seeking to invoke the Court's jurisdiction bears the burden of establishing that the Court has jurisdiction.  *See McCormick v. Aderholt*, 293

---

[2] The Motion to Return does not make clear whether it is referring to the Petition in Torres I or the Petition in this case.
[3] The Motion to Return does not specify which of the three Respondents would be responsible for executing the requested relief.
[4] Presumably, this is a typographical error.
[5] Blackstone defined the writ of habeas corpus as a writ "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his detention."  3 WILLIAM BLACKSTONE, *Commentaries on the Laws of England* 131.

F.3d 1254, 1257 (11th Cir. 2002). Not only is it unnecessary for district courts to wait for lack of subject matter jurisdiction to be raised as a defense, it is "axiomatic" that district courts may not passively stand by waiting for the issue to be raised. *See University of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999). "[B]ecause the Constitution unambiguously confers [] jurisdictional power to the sound discretion of Congress, federal courts 'should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction.'" *Id.* (cleaned up). When a district court acts without subject matter jurisdiction, "it violates the fundamental constitutional precept of limited federal power," "unconstitutionally invades the powers reserved to the states to determine controversies in their own courts," and "offends fundamental principles of separation of powers." *Id.* at 410.

Doubt as to the existence of its jurisdiction may arise from a trial court's examination of the face of the pleading and the attached exhibits. *See McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). If the court determines that the face of the petition fails to allege a sufficient basis for subject matter jurisdiction, dismissal is appropriate. *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

A district court is required to consider its jurisdiction before issuing the writ of habeas corpus, *see Sampson v. Warden, FCC Coleman-USP I*, 605 F. App'x 861, 863 (11th Cir. 2015), because the courts are limited to issuing the writ "within their respective jurisdictions." 28 U.S.C. § 2241(a).

### C.    Jurisdiction Over the Custodian

To determine whether it has jurisdiction in a habeas proceeding, the court must be able to identify who the petitioner alleges had physical custody over him at the time the petition was filed. *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973). The "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* at 494–95. Thus, the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner.]'").

In *Rumsfeld v. Padilla*, the Supreme Court expressly disapproved the idea that the immediate custodian rule is "flexible." *See id.* at 436. As a "default rule," the *Padilla* court explained that "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. Under this default rule, jurisdiction generally lies in only one district: the district of confinement. *Id.* at 442. The Court's jurisdiction is fixed as of the date the petition is filed and if the petition adequately names the immediate custodian, then subsequent moving of the petitioner does not defeat the court's habeas jurisdiction. *Id.* at 441 (discussing *Ex parte Endo,* 323 U.S. 283 (1944)). The district court "d[oes] not lose its jurisdiction when a habeas corpus petitioner [is] removed from the district so long as an appropriate respondent with custody remain[s]." *Jones v. Cunningham*, 371 U.S. 236, 243–44 (1963).

### D.    Inapplicability of Jurisdiction-Stripping

District courts have the power to issue writs of habeas corpus pursuant to 28 U.S.C. §
2241(a).  However, Congress "may 'give, withhold or restrict such jurisdiction at its discretion,
provided it be not extended beyond the boundaries fixed by the Constitution,'" *University of
South Alabama*, 168 F.3d 405, 409 (11th Cir. 2001) (quoting *Marathon Oil Co. v. Ruhrgas*, 145
F.3d 211, 215 (5th Cir. 1998) (en banc)), and, to this end, Congress has statutorily provided
that district courts have limited jurisdiction to issue writs of habeas corpus in certain
immigration and alien removal contexts.  *See* 8 U.S.C. § 1252(a)(2)(A).

If, in the give-and-take of a complicated statutory scheme enacted by Congress, a trial
court ultimately lacks jurisdiction, the court cannot allow the litigation to proceed under the
guise of a claim that "dress[es] up a claim with legal or constitutional clothing to invoke [its]
jurisdiction." *Camarena v. Director, Immigration & Customs Enforcement*, 988 F.3d 1268, 1274 (11th
Cir. 2021) (quoting *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020)).  And while
the Constitution states that "[t]the privilege of the Writ of Habeas Corpus shall not be
suspended, unless when in Cases of Rebellion or Invasion the public safety may require it,"
U.S. Const. art. I, § 9, cl. 2, "[t]he writ of habeas corpus known to the Framers was quite
different from that which exists today." *Felker v. Turpin*, 518 U.S. 651, 663 (1996).  If a writ
was not available as the writ was understood in 1789, the unavailability of it today does not
violate the Suspension Clause.  *Jones v. Hendrix*, 8 F.4th 683, 689–90 (8th Cir. 2021) ("Further,
considering that the Suspension Clause refers to a specific legal instrument that existed at the
time, we think there is a good reason to adhere closely to the 1789 meaning.").

Claims that are "far outside the 'core' of habeas may not be pursued through habeas." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (rejecting a habeas petition used to obtain authorization for an alien to remain in a country other than his own, noting that "we have no evidence that the writ as it was known in 1789 could be used to require that aliens be permitted to remain in a country other than their own, or as a means to seek that permission."). Although a habeas court has the power to order the conditional release of an unlawfully-detained person, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

### E.     Habeas Rules

A petition for a writ of habeas corpus is governed by the Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94-426 (the "Habeas Rules"). While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule 1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)." The Habeas Rules are consistent with the statutory requirements imposed by 28 U.S.C. § 2242, which require that "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."

Like 28 U.S.C. § 2242, Rule 2(c) of the Habeas Rules requires that the petition "specify all the grounds for relief available to the petitioner;" "state the facts supporting each ground;" and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Habeas Rule 2(c)(1), (2), (5).

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" And "[i]n every case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent and on the attorney general or other appropriate officer of the state involved." *Id.*

"A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4. *Mayle v. Felix*, 545 U.S. 644, 656 (2005). As between Rule 8 of the Federal Rules of Civil Procedure and Rule 2(c) of the Habeas Rules, "Habeas Corpus Rule 2(c) is more demanding." *Id.* at 655.

### F.    Preliminary Injunctive Relief

To establish entitlement to preliminary injunctive relief, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The balance-of-the-harms and public-interest elements merge when the government is the party opposing the injunctive relief." *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022) (citing *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020)). "A

preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). A failure to establish any one of these elements warrants denial of injunctive relief. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990) (vacating a preliminary injunction based solely on plaintiff's failure to establish irreparable injury).

"Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party." *Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990). Consequently, in considering a request for injunctive relief the Court must assess the remedies available in the underlying action. If the request for injunctive relief seeks a remedy different or greater than the remedy available if the movant were to prevail at the conclusion of an adjudication on the merits, then the request must be denied.

A district court may issue a preliminary injunction or temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Trial courts have discretion to determine the amount of security Rule 65 requires. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (stating that the trial court did not abuse its discretion when it did not set a bond upon the issuance of the preliminary injunction).

### G. Local Rules of the Middle District of Florida

Middle District of Florida Local Rule 6.01 provides that a motion for temporary restraining order "must include" "(1) 'Temporary Restraining Order' in the title; (2) specific facts — supported by a verified complaint, an affidavit, or other evidence — demonstrating an entitlement to relief; (3) a precise description of the conduct and the persons subject to restraint; (4) a precise and verified explanation of the amount and form of the required security; (5) a supporting legal memorandum; and (6) a proposed order."

Local Rule 6.02 provides that a motion for preliminary injunction "(1) must include 'Preliminary Injunction' in the title but otherwise must comply with Local Rule 6.01(a) and (b) and (2) must include as an attachment each paper on which the movant relies."

## II.    ANALYSIS

### A.    The Petition

#### 1.    Failure to Adequately Allege Jurisdiction Over the Custodian

The factual assertions in the Petition are so vague and contradictory that it cannot be discerned who is alleged to have been the immediate custodian over Mr. Torres when the Petition was filed. Because Mr. Torres did not amend the petition in Torres I and filed a new case, the Court's jurisdiction must be assessed as of the filing of *this* petition, not the petition in Torres I. The allegations of the Torres II petition contain no clear and unequivocal identification of his immediate custodian at the time the Petition in this case was filed.

The imprecise and contradictory nature of the Petition underscores the problem. On the one hand, the Petition alleges that Mr. Torres is still in the custody of the warden of the Orange County Jail. (Doc. # 1 at 1) ("This is a petition . . . challenging the ongoing and

11

unlawful detention of Petitioner at the Orange County Jail in Orlando, Florida"); (*id.* at 2) ("Petitioner is . . . detained at the Orange County Jail."); (*id.* at 2) ("Respondent [Quinones] is the Warden of the Orange County Jail, responsible for Petitioner's day-to-day confinement."). On the other hand, Petition alleges that Mr. Torres is removed from the Orange County Jail, transported to an ICE facility, and then returned to the Orange County Jail.  (Doc. # 1 at 3.) Complicating the inconsistency, the Petition repeatedly refers to "Respondents" without identifying which of them Mr. Torres alleges was his immediate custodian on the date this case was filed.

When petitioned to interfere with the workings of the State of Florida or another branch of the federal government, the Court's role is to first neutrally determine if the petitioner has complied with threshold legal requirements that uniformly apply in such cases. One of those requirements is that the petitioner must clearly and unequivocally allege the identity of his immediate custodian at the relevant time, and name that individual as the respondent.  *See Padilla*, 542 U.S. at 439 ("We have never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent[.]").  Failing to satisfy that requirement, the Petition is due to be dismissed.

## 2.    As a Matter of Law, the Petition in Torres II Does Not Relate Back to the Filing of the Petition in Torres I

Mr. Torres seemingly attempts to plead the applicability of the relation-back doctrine, suggesting that Mr. Torres's custodian should be established as of the date of filing the petition in Torres I.  The Federal Rules of Civil Procedure do provide that "[a]n amendment to a pleading relates back to the date of the original pleading," Fed. R. Civ. P. 15(c)(1), but the relation-back doctrine does not apply to distinct pleadings filed in two separate actions, even

if they arise from the same course or conduct. *See Titus v. Miami Dade Cnty.*, 757 F. App'x 824, 827 (11th Cir. 2018); *see also Dade Cty. v. Rohr Indus.*, 826 F.2d 983, 989 (11th Cir. 1987) (holding that the relation-back doctrine may not be used to revive the date of filing for a previously dismissed first complaint where a plaintiff files a new second complaint).

### 3.    The Petition Does Not Allege Inapplicability of Jurisdiction-Stripping Statutes

The jurisdiction of a district court to issue a writ of habeas corpus is a give-and-take proposition. Congress undeniably granted district courts the power to issue the writ. 28 U.S.C. § 2241(a). Just as undeniably, Congress expressly deprived district courts of the power to issue the writ in certain immigration contexts. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(A). Here, the Petition clearly demands issuance of the writ in an immigration context and, despite being made aware of the Court's concerns about jurisdiction in Torres I, does not allege that no jurisdiction-stripping statute applies.

The issue of jurisdiction is no mere technicality. Binding precedent directs that a court may not bend jurisdictional rules for cases it deems "exceptional," "special," or "unusual," *Padilla*, 542 U.S. at 450, and "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists[.]" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). As the party invoking the Court's jurisdiction, it is Mr. Torres's obligation to satisfy the Court that it has jurisdiction. Mr. Torres had notice of the Court's jurisdictional concern after the dismissal in Torres I. Nevertheless, the allegations of the Petition continue to be insufficient for the Court to determine that it has the power to adjudicate. Dismissal is appropriate under these circumstances.

### 4.    The Petition Fails to Comply with the Habeas Rules

Even if the Petition adequately alleged the existence of jurisdiction (and it did not, for the reasons identified above), the Petition is due to be dismissed because in various other respects it fails to comply with federal requirements.  Whether examined under the Federal Rules of Civil Procedure or the Habeas Rules, the Petition fails to comply with requisite pleading standards.  If examined under the Habeas Rules, the Petition notably fails to meet the requirements of Rule 2(c).  It does not "specify all grounds for relief available to the petitioner" or "state the facts supporting each ground."

Rule 4 requires that the Court perform a screening function in habeas cases and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . the judge must dismiss the petition[.]"  The Petition here demands that this Court take the extraordinary step of directing the work of a different branch of government; it does so with assertions that are simply not supported (if not outright contradicted) by the exhibits attached.

In support of the assertion that he is lawfully present in the United States, Mr. Torres attached to his Petition a copy of his Temporary Florida Driver License, without explaining how the State of Florida could, as a matter of law, confer immigration status on him by issuing a Temporary Florida Driver License.  He attached a United States of America Employment Authorization Card and a Social Security Card, again without explaining how those documents confer immigration status.  Indeed, his Social Security Card is marked "Valid for Work Only With DHS Authorization."  He attached an expired I-797A Notice of Action, which, if anything, contradicts his allegation; the I-797A reflects that his Temporary Protected Status

expired on April 2, 2025. He attached a Form I-797C Notice of Action reflecting that Mr. Torres applied for asylum in the United States on May 3, 2023, but that form states on its face in all capital letters that "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." (Doc. # 1, at Ex. A.)

Meanwhile, the Petition leaves out obviously important details, such as the circumstances leading to Mr. Torres's detention. It is replete with conclusory allegations. For example, the assertion that Mr. Torres's detention, without criminal charges, probable cause, or a warrant, is unlawful. This allegation, and the Petition generally, suggest that the Court should insert itself without considering the complex framework of immigration law, under which an alien can be detained for a host of reasons, some of which are non-criminal. *See, e.g.*, 8 U.S.C. § 1226(1) (directing the Attorney General to detain an inadmissible alien "charged with, arrested for, convicted of, admits having committed, or admits committing acts which constitute the essential elements of" certain crimes, or "is determined to have communicable diseases of public health significance", who failed to provide the necessary vaccine documentation, has certain mental or physical disorders or history of behavior associated with the disorder, or "who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to be a drug abuser or addict.").

Additionally, as noted above, the facts alleged in the Petition are contradictory. In addition to the inconsistent allegations about the identity of Mr. Torres's custodian, the Petition makes contradictory allegations about the legal basis for detention. On one hand, the Petition alleges that the detention is based solely on an immigration detainer, and because the detainer is the *sole* basis, his confinement is unlawful. (See Doc. # 1 at 2, 3, 4, 7.) However,

the Petition later alleges that "[t]he Government's detention of petitioner under § 1225 is unlawful, and he is entitled to habeas relief." (Doc. # 1 at 6.) While courts must take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, *see Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), "conclusory allegations [and] unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## 5. The Petition is a Shotgun Pleading

Even if the Habeas Rules did not apply, the Petition is a shotgun pleading subject to dismissal pursuant to Rule 8. Pleadings that fail under Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four types of shotgun pleadings, all of which share the common defect of failing to give the defendant adequate notice of the claims asserted or the grounds supporting them. *Id.* at 1323. Although "it is much easier in the short term to permit shotgun pleadings . . . instead of intervening *sua sponte* to narrow the issues," "district courts have the power and the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

Here, the Petition is the fourth type of shotgun pleading because it improperly lumps Respondents together in a way that makes it impossible for the Court to determine who Mr. Torres alleges did what, and when. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir.

2021) (explaining a pleading that asserts a claim against multiple defendants "without specifying which of the defendants are responsible for which acts or omissions" is a prohibited shotgun pleading).  The Petition names three different individuals but fails to differentiate among them.  For example, Mr. Torres alleges that "Respondents have indicated intent to transfer Petitioner to ICE custody before this Court can adjudicate the legality of his detention."  (Doc. # 1 at 3.)  Aside from grouping the Respondents together and failing to identify which of the Respondents is Mr. Torres's custodian, the Petition impermissibly leaves open the question of who took the alleged actions and made the alleged threats.  While the pleading standard of Rule 8 does not require "detailed factual allegations," it demands more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    The Motion for TRO

#### 1.    Procedural Failures

The Motion for TRO is due to be denied because it fails to meet the requirements of Local Rule 6.01 or Federal Rule of Civil Procedure 65.  Local Rule 6.01(a)(2) requires a movant to submit "specific facts — supported by a verified complaint, an affidavit, or other evidence — demonstrating an entitlement to relief[.]"  While the Motion for TRO purports to be verified by Mr. Torres's counsel based on a declaration within the Motion for TRO, the careful wording of the verification indicates it is clearly not derived from the personal knowledge of the attorney who verified it.  This is plainly insufficient to amount to verification.  To "verify" something means to "prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of."

*Verify*, Black's Law Dictionary (12th ed. 2024). Here, notably the "verification" offered by Petitioner's counsel is "based on [counsel's] personal knowledge, my communications with Petitioner, review of jail and immigration records, communications with jail officials and information obtained in the course of representing Petitioner." (Doc. # 2 at 6.) Counsel goes on to state that "[t]o the best of my knowledge . . . the factual allegations contained in the Petition are true and correct, including but not limited to the following…" (*Id.*) Perhaps the most helpful aspect of this "verification" is that counsel swears under oath that he is really in no position to say whether much of anything in the Petition is true. While "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction," it should only do so "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). As other jurisdictions have acknowledged, "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his knowledge, information and belief,' means nothing 'more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their truth simply amounts to nothing.'" *Board of Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962).

In this instance, the form of the verification is clearly not appropriate given the character and objectives of this proceeding. By its own terms, the verification explains that counsel's facts depend on sources that cannot be deemed reliable under these circumstances. Thus, the verification in support of the Motion for TRO is insufficient.

Moreover, the Motion for TRO fails to meet additional procedural requirements. For one, it does not include a "precise and verified explanation of the amount and form of the required security." Indeed, the Motion utterly ignores the security requirement of Local Rule 6.01(a)(4) and Federal Rule of Civil Procedure 65(c) altogether. The Motion is due to be dismissed on these grounds alone.

### 2.    Substantive Failures

Even if Mr. Torres has met the preliminary requirements for injunctive relief (and he has not), the Motion for TRO must also be denied because it fails to establish the substantive requirements of injunctive relief.

### a.    Likelihood of Success on the Merits

Both (1) for the same reasons that justify dismissal of the Petition and also (2) because the Petition is dismissed, Mr. Torres cannot establish a substantial likelihood of success on the merits of his Petition. "Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief." *Powell v. Rios*, 241 F. App'x 500, 505 n.4 (10th Cir. 2007). A complaint is required because "injunctive relief must relate in some fashion to the relief requested in the complaint." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). The requested relief cannot "deal[ ] with a matter lying wholly outside the issues in the suit," *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997); *see Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990) ("Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party."). "[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016)

(quoting *Kedzierski v. Kedzierski*, 899 F.2d 681, 684 (7th Cir. 1990)). Because the Petition is dismissed, the Motion must be denied.

Even if the dismissal of the Petition did not compel denial of the Motion for TRO, Mr. Torres failed to present any controlling authority allowing injunctive relief in the form of (1) prohibiting his transfer from one facility to another and/or (2) ordering expedited proceedings. Indeed, there are good reasons to question whether such relief is within this Court's authority to grant. Courts have interpreted immigration statutes to mean that district courts *do not* have jurisdiction to enjoin the transfer of detainees from one location to another in other contexts. *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (recognizing the Attorney General's authority to determine the location of detention and, "therefore, to transfer aliens from one detention center to another"); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (recognizing that the Attorney General has "discretionary power to transfer aliens from one locale to another, as she deems appropriate"); *see also* 8 U.S.C. § 1231.

Further, Mr. Torres requests the entry of a preliminary injunction that seemingly would grant him relief that is not available in the underlying writ proceeding. The law does not permit this in other contexts and Mr. Torres does not explain how it could here. He has not provided any authority for the proposition that the writ would entitle him to an injunction prohibiting his transfer from one place to another. Mr. Torres has not even provided controlling authority that demonstrates he would be entitled to release if the petition were granted. The Supreme Court has made clear that release is *not* the "exclusive remedy," nor is it "the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779. In the same vein, Mr.

Torres has not supplied authority for the proposition that the power to order release necessarily also includes the power to prohibit transfer from one facility to another, and both immigration statutes and cases interpreting those statutes suggest it would not.

Before turning to other issues, the Fifth Circuit's decision in *Buenrostro-Mendez* conceivably impacts Mr. Chirinos's likelihood of success on the merits. For this reason, if the Petition is amended and the Motion for TRO is renewed, Mr. Chirinos must include in his memorandum of law analysis of the applicability of *Buenrostro-Mendez*.

### b.    Irreparable Harm

Mr. Torres also fails to establish that he will suffer irreparable harm absent injunctive relief. To satisfy this requirement, Mr. Torres must demonstrate that, unless an injunction is issued, he will suffer an injury that is neither "remote nor speculative, but actual and imminent," and the injury is one that cannot be remedied if a court waits until the end of trial to resolve it. *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)).

With no citation to legal authority, Mr. Torres alleges in a conclusory fashion that (1) his loss of physical liberty constitutes irreparable harm as a matter of law and (2) transfer to ICE custody would irreversibly alter his custodial status and risk mooting or frustrating this Court's jurisdiction. Notwithstanding the fact that Mr. Torres has failed to allege facts sufficient for the Court to conclude that his detention is unlawful, the Motion for TRO does not explain why his transfer would cause an actual and imminent injury not compensable post-resolution on the merits. *See City of Jacksonville*, 896 F.2d at 1285; *Siegel*, 234 F.3d at 1177

("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm.  Our case law has not gone that far, however.").

### c.    Balance of Equities and Public Interest

As a matter of law, immigration policy decisions are entrusted to the political branches and courts owe substantial deference to those judgments. *Trump v. Hawaii*, 585 U.S. 667, 703–04 (2018).  Particularly where the Petition's failure to comply with federal law and pleading requirements impede the Court's ability to assess the Petition, Mr. Torres has not demonstrated that the balance of equities and the public interest weigh in his favor.

### C.    Motion to Order Return to Middle District of Florida

The Motion to Return is due to be denied because, on its face, it falls short of the high burden for obtaining mandatory injunctive relief.  "[A] mandatory injunction . . . orders a party to 'take action.'"  *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1221 (11th Cir. 2002).  Here, if the Court granted the relief requested in the Motion to Return, it would compel the Respondents "to immediately disclose Petitioner's location" and "immediately return Petitioner . . . to the Middle District of Florida." (Doc. # 2 at 3.)

"Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976).[6] Since Mr. Torres failed to meet his burden for preliminary injunctive relief for the previously-

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

stated reasons, it is evident he has failed to meet the even higher burden associated with a mandatory injunction.

## III.    CONCLUSION

For the reasons stated here, the Petition is due to be dismissed and both the Motion for TRO and the Motion to Return are due to be denied.  If the Petition is amended, Mr. Torres is directed to brief the impact of the Fifth Circuit's recent decision in *Buenrostro-Mendez*.

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.    Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. # 1) is **DISMISSED**;

2.    Petitioner's Emergency Motion to Order Return to Middle District of Florida (Doc. # 2) is **DENIED**;

3.    Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 3) is **DENIED**; and

4.    The Clerk is directed to **SERVE** a copy of the petition and this Order on the Respondents, to the extent they are named, and the Attorney General of the State of Florida, pursuant to Rule 4 of the Habeas Rules.

**DONE** and **ORDERED** this 13th day of February, 2026 in Chambers in Orlando, Florida.

ANNE LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Petitioner
Respondents, to the extent named
Attorney General of Florida